**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

MICHAEL C.,

                              Plaintiff,

        v.                                            3:18-CV-0386
                                                      (CFH)
ANDREW M. SAUL, [1]
Commissioner of Social Security,

                              Defendant.
_____

**APPEARANCES:**                         **OF COUNSEL:**

LACHMAN & GORTON                         PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089
Attorneys for plaintiff

U.S. SOCIAL SECURITY ADMIN.              HEATHER SERTIAL, ESQ.
OFFICE OF REG'L GEN. COUNSEL
REGION II
26 Federal Plaza - Room 3904
New York, New York 10278
Attorneys for defendant

**CHRISTIAN F. HUMMEL
United States Magistrate Judge**

              **<u>MEMORANDUM-DECISION & ORDER</u>**

        Currently before the Court, in this Social Security action filed by Michael C.

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. § 405(g), are Plaintiff's motion for judgment on

_____

[1]        Andrew M. Saul became the Commissioner of Social Security on June 17, 2019.  The Clerk of
Court is respectfully directed to amend the caption.

the pleadings and Defendant's motion for judgment on the pleadings.  (Dkt. Nos. 11 and 12.)  For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.  The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1967, making him 44 years old at the alleged onset date and 49 years old at time of the ALJ's decision.  Plaintiff reported completing one year of college and had past work as an electromechanical technician.  At the initial level, Plaintiff alleged disability due to a lower back impairment with permanent nerve damage, scar tissue, arthritis, and loss of feeling in the right leg.

### B.    Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on October 24, 2014, initially alleging an onset date of February 22, 2012.  Plaintiff's application was initially denied on February 3, 2015, after which he timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at hearings before ALJ Kenneth Theurer on May 26, 2017, and August 30, 2017.  (T. 45-79, 82-92.) [2]  On September 13, 2017, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 27-44.)  On February 2, 2018, the Appeals

---

[2]     The Administrative Transcript is found at Dkt. No. 9.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-6.)

## C. ALJ's Decision

First, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2016 (date last insured, "DLI"). (T. 32.) Second, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of February 22, 2012, through his DLI. (*Id.*) Third, the ALJ found that Plaintiff had severe impairments including degenerative disc disease of the lumbar spine and status post lumbar spine surgeries through the DLI. (*Id.*) Fourth, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (T. 33.) Specifically, the ALJ considered Listing 1.04 (disorders of the spine). (*Id.*) Fifth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work

> except he can occasionally lift and carry ten pounds, sit for approximately six hours, stand or walk for approximately two hours in [an] eight hour day with normal breaks; occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl. [He] needs to be permitted to alternate from seated to a standing position (or vice versa) two times each hour for not more than 5 minutes while remaining on task. He requires the use of a cane to ambulate and retains the ability to carry a small object such as a file or ledger in his free hand. [He] would be limited to simple, repetitive, routine tasks.

(T. 34-35.) Sixth, the ALJ found that Plaintiff was unable to perform any past relevant work through the DLI. (T. 38.) Lastly, the ALJ found that Plaintiff was capable of

performing other jobs existing in significant numbers in the national economy through the DLI. (T. 39-40.) Therefore, the ALJ concluded that Plaintiff is not disabled.

### D. Arguments

#### 1. Plaintiff's Motion for Judgment on the Pleadings

First, Plaintiff argues that the Appeals Council failed to consider new evidence he submitted including deposition testimony from treating physician Kevin Hastings, D.O., and that it is unclear whether the Appeals Council reviewed the evidence as its denial stated "'this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not consider and exhibit this evidence.'" (Dkt. No. 11 [Pl.'s Mem. of Law] at 12-15.) Plaintiff maintains that the Appeals Council did not conclude this evidence was not new or material; therefore, those factors are not at issue here. (*Id.* at 12, n. 1.) Plaintiff also argues that the Appeals Council provided no explanation why this evidence is not likely to change the outcome and that "this evidence is likely to change the outcome as it reflects the severity of Plaintiff's impairments and directly addresses the ALJ's findings." (*Id.* at 13-14.) Plaintiff additionally argues that the Appeals Council erred by failing to consider Dr. Hastings' testimony under the treating physician rule. (*Id.* at 14-15.)

Second, Plaintiff contends that the RFC determination is not supported by substantial evidence. (*Id.* at 16-20.) Specifically, Plaintiff argues that the ALJ improperly substituted his own lay judgment for that of competent medical opinions on issues relating to sit and stand limitations. (*Id.* at 16-20.) Plaintiff also contends that the medical opinions of record from Dr. Hastings; consultative examiner Gilbert Jenouri,

M.D.; and functional capacity examiner Terri Scager, OTR/L, do not provide substantial support for the ALJ's RFC determination. (*Id.* at 16-18.) Plaintiff argues that Dr. Jenouri's use of the term "mild" renders his opinion "very vague and ambiguous" and it is apparently inconsistent with his own examination findings. (*Id.* at 17-18.) Plaintiff also argues that (1) the Appeals Council and the ALJ failed to properly apply the treating physician rule, (2) the ALJ failed to properly weigh Ms. Scager's opinion, (3) the ALJ's analysis regarding time off-task and absenteeism is not overwhelmingly compelling and is insufficient to overcome Dr. Hastings' undisputed opinion, and (4) the RFC is not based on any medical opinion. (*Id.* at 20-25.)

Third, Plaintiff argues the Step Five determination is not supported by substantial evidence because the vocational expert ("VE") testimony was based on a flawed and incomplete hypothetical. (*Id.* at 25-26.)

## 2.    Defendant's Motion for Judgment on the Pleadings

First, Defendant argues that the ALJ's RFC finding is supported by substantial evidence because the ALJ properly weighed the medical opinions and the RFC was consistent with the objective medical evidence as a whole. (Dkt. No. 12, at 7-21 [Def.'s Mem. of Law].) Defendant points out that a medical opinion such as Dr. Jenouri's is not impermissibly vague where the conclusion is well-supported by the doctor's extensive examination. (*Id.* at 10.) Defendant also contends the ALJ properly considered Plaintiff's alleged symptoms and subjective complaints within the regulatory framework when rendering his RFC determination. (*Id.* at 11-12.)

Second, Defendant contends that the ALJ did not err in weighing the medical source opinions because the ALJ properly discounted Dr. Hastings and Ms. Scager's

opinions and credit Dr. Jenouri's opinion in determining the RFC. (*Id.* at 12-18.)

Defendant also argues that although the ALJ's conclusion may not perfectly correspond

with the medical opinions cited in the decision, he was entitled to weigh all of the

evidence in making an RFC determination consistent with the record as a whole. (*Id.* at

17-18.)

Third, Defendant argues that the Appeals Council properly determined that the

new evidence did not show a reasonable probability of changing the ALJ's decision. (*Id.*

at 18-20.) Specifically, Defendant contends that Dr. Hastings' deposition testimony

does not change any of the deficiencies the ALJ identified regarding Dr. Hastings'

opinion because "the evidence submitted did not include new treatment notes or clinical

findings, but simply offered conclusory statements." (*Id.* at 18.) Defendant argues that

the Appeals Council "did not need to consider this evidence since it was unlikely to

change the outcome of the ALJ's decision" and "the treating physician rule is

inapplicable here because Dr. Hastings' deposition testimony did not change his

opinion, which was inconsistent with the objective evidence and not supported by

evidence in the record." (*Id.* at 19.) Defendant maintains that Plaintiff mischaracterizes

the Appeals Council's language in assuming the Appeals Council did not assess this

evidence and that "the Appeals Council made its determination by plainly examining the

evidence." (*Id.* at 19-20.)

Fourth, Defendant contends that substantial evidence supports the ALJ's Step

Five finding because the ALJ properly weighed all the evidence and reached an RFC

finding that was supported by the record. (*Id.* at 20-21.)

      **3.**     **Plaintiff's Reply**

On reply, Plaintiff repeats his argument that "[b]ecause Defendant does not cite contrary medical opinion and does not offer overwhelming compelling non-medical evidence, Dr. Hasting[s'] opinion should be given controlling weight." (Dkt. No. 31-1 at 1-2.) Plaintiff maintains that Dr. Hastings' opinions are well-supported and that there is no contrary medical opinion or other evidence which is overwhelmingly compelling. (*Id.* at 2-4.)

Second, Plaintiff contends that Defendant's argument that "Dr. Jenouri's use of the term 'mild' is not insufficiently vague to support the ALJ's RFC" should be rejected because Defendant relies on a case which is a summary order "without precedential value" and which :cannot be squared: with binding Second Circuit precedent. (*Id.* at 4.) Plaintiff also argues that "to allow the ALJ to supply meaning to these terms "based on the ALJ's own interpretation of the consultative physician's report is essentially allowing the ALJ to disregard the physician's opinion and substitute his opinion for that of the physician." (*Id.* at 3-4.) Plaintiff reasserts his argument that "this Court should find Dr. Jenouri's assessment too vague to be of use." (*Id.* at 4.)

## II.    LEGAL STANDARDS

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied

correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Sequential Evaluation

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III.     ANALYSIS

#### A.     Whether the Appeals Council Properly Assessed Post-Decision Evidence

"Once evidence is added to the record, the Appeals Council must then consider the entire record, including the new evidence, and review a case if the 'administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Lesterhuis v. Colvin*, 805 F.3d 83, 86 (2d Cir 2015) (quoting 20 C.F.R. § 404.970(b)). "The Appeals Council is obligated to consider 'new and material evidence.'" *Stratton v. Colvin*, 51 F. Supp. 3d 212, 218 (N.D.N.Y. 2014) (citing 20 C.F.R. § 404.970(b)). "New evidence is 'material' if it is: '(1) relevant to the claimant's condition during the time period for which benefits were denied and (2) probative.'" *Stratton*, 51 F. Supp. 3d at 218 (quoting *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004)). "'The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently.'" *Id.* (quoting *Pollard*, 377 F.3d at 193) (alteration in original).

In considering Plaintiff's case, the Appeals Council received Dr. Hastings' November 2017 deposition by Dr. Hastings discussing Plaintiff's condition, Dr. Hastings' opinions from July and August 2017 regarding Plaintiff's limitations, and the ALJ's analysis of those opinions. (T. 7-21, 36-37, 484-90, 586-90.) Regarding this deposition evidence, the Appeals Council stated, "[w]e find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not consider and exhibit this evidence." (T. 2.) Plaintiff takes issue with this conclusion and language, arguing (1) that it is unclear whether the Appeals Council properly assessed the deposition, (2) the Appeals Council failed to provide sufficient explanation as to why the deposition is not likely to change the outcome, and (3) the Appeals Council erred in failing to consider Dr. Hastings' deposition testimony under the treating physician rule.

(Dkt. No. 11 at 12-15 [Pl.'s Mem. of Law]; Dkt. No. 13-1 at 4 [Pl.'s Reply Mem. of Law].)
The Court finds these arguments unpersuasive.

The Appeals Council's denial of review also states, "[w]e found no reason under
our rules to review the Administrative Law Judge's decision." (T. 1.) The denial of
review also explains that under the Appeals Council's rules, it will review a claimant's
case for a variety of reasons including if it "receive[s] additional evidence that [the
claimant] show[s] is new, material, and relates to the period on or before the date of the
hearing decision. [A claimant] must also show there is a reasonable probability that the
additional evidence would change the outcome of the decision." (T. 1-2.) It is apparent
from the Court's review that the Appeals Council received the deposition evidence from
Plaintiff, assessed the evidence to ascertain whether it presented a reasonable
probability that it would change the outcome of the decision, found it did not present
such a reasonable probability, and, therefore, did not consider it in making the decision
not to review the ALJ's decision or exhibit it along with the other evidence of record.
(*Id.*)

Though brief, the Appeals Council's explanation for its finding regarding the
deposition evidence is clear and adequately conveys its conclusion that Plaintiff failed to
show there was a reasonable probability that this additional evidence would have
changed the outcome of the decision. (T. 2.) Further, the Court's review of Dr.
Hastings' deposition testimony indicates that it is largely duplicative of evidence already
in the record. (T. 7-21.) For example, within his deposition testimony, Dr. Hastings
discussed his specialization in pain management, how he first treated Plaintiff in 2004
with more recent treatment starting in 2015, and how Plaintiff's treatment involves

multiple medications. (T. 9-10, 12, 16.) Dr. Hastings provides some further discussion of the purpose of Plaintiff's treatment (symptom relief), Plaintiff's activities of daily living, that Plaintiff's pain fluctuations with weather, and his assessment of Plaintiffs off-task limitations. (T. 11-17.) However, this testimony does not so illuminate or change the opinion evidence already provided by Dr. Hastings that the Court is convinced there is a reasonable probability it would change the outcome of the ALJ's decision. (T. 484-91.)

Finally, the Court finds that the Appeals Council did not err regarding the treating physician rule. Again, although it may be brief, the Appeals Council's denial of review indicates that it found no reason under its rules to review the ALJ's decision. (T. 1.) As discussed further in Section III.B. of this Memorandum-Decision and Order, because the ALJ properly considered Dr. Hastings' opinions pursuant to the treating physician rule, the Appeals Council did not err by implicitly relying on the ALJ's analysis in finding no reason to review the ALJ's decision under its rules. (T. 1, 36-37.) Thus, remand is not required on this ground.

### B. Whether Substantial Evidence Supports the ALJ's Analysis of the Opinion Evidence and Plaintiff's RFC

RFC is defined as "'what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)).

"Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, 11-CV-0927, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *8). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 404.1527(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the

consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6).

In January 2013, Ms. Scager conducted a functional capacity evaluation. (T. 298-316.) Ms. Scager noted a work-related injury to the low-back region from November 2002, and further noted that Plaintiff was able to do occasional-to-frequent sitting and standing; occasional walking; frequent reaching; occasional-to-frequent pushing/pulling; occasional arm and leg control; could rarely climb; and could never bend, squat, balance, kneel, or crawl. (T. 300, 312.) Ms. Scager indicated that Plaintiff did not appear qualified for competitive employment at that time, with limiting factors including significant low-back pain with limited positional tolerances for continuous sitting and continuous standing/walking, in addition to limitations in multiple other functional activities such as bending, squatting, kneeling, climbing, lifting, pushing, and pulling. (T. 313-14.)

The ALJ noted that Ms. Scager indicated that Plaintiff did not meet the criteria for competitive employment, but that the summary capacities chart within her assessment did not appear to support her conclusion that Plaintiff was "disabled per se." (T. 38, 310, 314.) The ALJ also indicated that the assessment was not fully consistent with Plaintiff's activities of daily living; medical evidence documenting that Plaintiff's condition is stable with reports of increased functioning on a treatment plan including medication; dorsal column stimulator ("DCS") and osteopathic manipulations ("OMT") sessions; or medical evidence showing full strength in the lower extremities, normal sensation and

reflexes, and no muscle atrophy or edema of the lower extremities. (T. 38, 337-85, 396-591.)

In January 2015, Dr. Jenouri conducted consultative examination. Dr. Jenouri noted that Plaintiff appeared to be in no acute distress, had a normal gait and stance and full squat, could walk on heels and toes without difficulty, used a cane for pain (Plaintiff reported always using it and that it was prescribed by his physician), needed no helping change for the exam or getting on and off the exam table, and was able to rise from a chair without difficulty. (T. 397.) Dr. Jenouri recommended that Plaintiff continue using the cane and observed that Plaintiff had limited range of motion in the lumbar spine, positive straight leg raising ("SLR") testing at 45 degrees on the right (confirmed seated), and positive SLR at 60 degrees on the left (not confirmed seated), limited range of motion in the hips, physiologic and equal deep tendon reflexes in the upper and lower extremities, decreased sensation to fine touch in the right lower extremity with an L5 distribution, and full strength in the upper and lower extremities. (T. 397-98.) Dr. Jenouri diagnosed lower back pain, right lower extremity radiculopathy, and osteoarthritis, noting a lumbosacral x-ray showing left lateral fusion at L3-L4 with a disc implant, straightening, and neurostimulator in place. (T. 399-400.) He opined that Plaintiff had mild restriction in walking, standing, and sitting for long periods; bending; stair climbing; lifting; and carrying. (T. 399.)

The ALJ afforded some weight to Dr. Jenouri's opinion "in so far as it suggests that [Plaintiff] retains some ability to perform work demands" because the opinion seemed "somewhat consistent with the evidence that generally documents decreased range of motion of the lumbar spine with tenderness of the low back area, but with 5/5

strength, normal sensation and reflexes and no muscle atrophy or edema of the lower extremities." (T. 37-38, 337-85, 396-591.) The ALJ also noted that he found Plaintiff had more than mild physical limitations based on his multiple surgeries. (T. 38.)

In July 2017, Plaintiff's treating physician Dr. Hastings opined Plaintiff could occasionally lift and carry up to 10 pounds; sit, stand, and walk for less than 30 minutes at a time for a total of one hour each (with the rest of the time spent lying down or reclining); occasionally reach; frequently handle and finger; occasionally feel (due to numbness); never push or pull; occasionally use the feet for operation of foot controls; occasionally climb stairs and ramps (slowly and cautiously); never climb ladders or scaffolds; occasionally balance; never stoop or crawl; occasionally kneel and crouch; never tolerate unprotected heights, extreme cold, or vibrations; and occasionally tolerate moving mechanical parts, operation of a motor vehicle, humidity/wetness (pain-provoking), pulmonary irritants, and extreme heat. (T. 484-88.) Dr. Hastings noted that Plaintiff uses a medically-necessary cane and could ambulate less than 200 feet without the cane. (T. 485.) Dr. Hastings also opined that Plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces but could slowly and cautiously climb a few steps at a reasonable pace with the use of a single hand rail. (T. 489.)

In August 2017, Dr. Hastings opined that Plaintiff's conditions and/or medication side effects would cause pain, fatigue, diminished concentration and work pace, and the need to rest at work. (T. 587.) Plaintiff would be off-task more than 33 percent of the day and absent more than four days per month. (*Id.*) Dr. Hastings also indicated Plaintiff's medications included Gabapentin, fentanyl, Percocet, methocarbamol, Lidocaine patches, and Omeprazole, with side effects including fatigue, sedation,

concentration impairment, masking of painful warnings on task with the risk of further injury, and dizziness.  (*Id.*)  Dr. Hastings indicated Plaintiff's limitations had been present since February 2012.  (T. 588.)

The ALJ gave Dr. Hastings' opinions little weight because clinical findings did not support such "extreme restrictions, which suggest that [Plaintiff] is bed-ridden for 21 hours of the day."  (T. 36-37.)  The ALJ cited to a July 13, 2017, treatment note from Dr. Hastings (which predates his July 17, 2017, assessment by four days) in which Plaintiff presented as "healthy, well-developed, with no signs of distress" and noted that the examination did not support the limitations by Dr. Hastings identified.  (T. 37, 581.)  The ALJ also indicated Dr. Hastings' opinion that Plaintiff would be off-task 33 percent of the work day due to pain and medications was not supported by his examinations generally describing Plaintiff as presenting in no acute destress, alert and fully oriented, healthy, and with a normal mood and affect.  (T. 37, 484-591.)  The ALJ stated that Dr. Hastings failed to acknowledge his own notes showing no reported side effects from medications as well as Plaintiff's "good response to OMT."  (T. 37, 534, 538.)  The ALJ also found the allegation that Plaintiff had good and bad days was not supported by the record, with evidence showing that he is stable on his treatment regimen of medications, OMT and use of the DCS.  (T. 37.)  The ALJ noted that Dr. Hastings failed to acknowledge Plaintiff's "multiple reports since starting OMT that the treatments helped improve his functioning."  (T. 37, 484-585.)  The ALJ also indicated that, despite opining Plaintiff's limitations were present since February 2012, Dr. Hastings first saw Plaintiff in May 2015, rendering his opinions applicable only to the period from May 4, 2015, onward.  (T. 37, 490.)

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because (1) the ALJ improperly substituted his lay judgment for competent medical opinions, (2) the medical opinions of record from Dr. Hastings, Dr. Jenouri and Ms. Scager do not provide substantial support for the ALJ's RFC finding, (3) Dr. Jenouri's use of "mild" renders his opinion vague and ambiguous and his opinion is inconsistent with his own examination findings, (4) the Appeals Council and the ALJ failed to properly apply the treating physician rule, (5) the ALJ failed to properly weigh Ms. Scager's opinion, and (6) the ALJ's analysis regarding time off-task and absenteeism is not overwhelmingly compelling and is insufficient to overcome Dr. Hastings' opinion. (Dkt. No. 11, at 16-25 [Pl.'s Mem. of Law]; Dkt. No. 13, Attach. 1, at 1-4 [Pl.'s Reply Mem. of Law].) The Court finds these arguments unpersuasive for the following reasons.

First, the Court's review indicates that the ALJ's RFC analysis and related findings are supported by substantial evidence. To be sure, the evidence indicates that Plaintiff has a longstanding back impairment with multiple surgeries including one to correct a poorly functioning DCS. (T. 319, 337-38, 402, 443.) However, Plaintiff's arguments do not establish that the ALJ's analysis is marred with improper substitution of his own lay opinion. (T. 33-38.)

Second, as noted above, the ALJ provided sufficient and specific reasons for the weight afforded to each of the medical opinions. (T. 36-38.) Although Plaintiff maintains that the medical opinions of record do not provide substantial support for the RFC and that the RFC is not based on any medical opinion, it is clear to the Court that the ALJ properly weighed the evidence before him in determining Plaintiff's RFC.

Further, it is within the ALJ's purview to resolve any material conflicts in the evidence and various opinions of record. *See Bliss v. Colvin*, 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *accord Petell v. Comm'r of Soc. Sec.*, 12-CV-1596, 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014). Similarly, although Plaintiff argues that the ALJ's analysis regarding time off-task and absenteeism is insufficient to overcome Dr. Hastings' opinions, the ALJ provided sufficient analysis of Dr. Hastings' opinions and of the evidence, ultimately finding further limitations regarding off-task time and absenteeism were not warranted.

Third, as indicated in Section III.A. of this Memorandum-Decision and Order, the Court finds that the ALJ (and the reviewing Appeals Council) properly considered Dr. Hastings' opinions of record pursuant to the treating physician rule. (T. 36-37.) The ALJ noted in his decision that Plaintiff began seeing Dr. Hastings for pain management in May 2015[3] and continued these treatments. (T. 35, 484-591.) Again, the ALJ provided multiple specific reasons for affording less than controlling weight to Dr. Hastings' opinions including that the clinical findings of record did not support the "extreme" opined limitations. (T. 37.) Similarly, the Court does not find that Plaintiff's argument regarding the ALJ's analysis of Ms. Scager's opinion persuasive because the ALJ reviewed the assessment and explained it was not fully consistent with the medical

---

[3]    In the deposition testimony Plaintiff submitted to the Appeals Council, Dr. Hastings indicated he first treated Plaintiff in 2004 with more recent treatment starting in May 2015. (T. at 9.) Again, the Court does not find that this deposition evidence shows a reasonable probability that it would change the outcome of the ALJ's decision. Although the ALJ noted Dr. Hastings was "offering an opinion on a more than three-year period before he started treating [Plaintiff]" in discussing Dr. Hastings opinions from July and August 2017, the ALJ acknowledged the treating relationship between Dr. Hastings and Plaintiff in his decision. (T. 35-37.) Additionally, the ALJ provided other reasons for affording little weight to Dr. Hastings' opinions. (T. 37.)

evidence. (T. 38.) Although the ALJ did not assign a specific weight to Ms. Scager's opinion, it is clear the ALJ considered the opinion and found it to be inconsistent with the record. (*Id.*) Further, failure to assign specific weight can be harmless, as it is here. *Blabac v. Comm'r of Soc. Sec.*, 08-CV-0849, 2009 WL 5167650, at *9 (N.D.N.Y. Dec. 18, 2009) (collecting cases which indicate harmless error where the opinions that the ALJ failed to weigh either did not conflict with the ALJ's findings or written consideration of the opinions would not have changed the outcome of the ALJ's decision).

Fourth, although Plaintiff takes issue with Dr. Jenouri's use of the term "mild" in his consultative opinion, the Court finds that it does not require remand in this case. The ALJ afforded some weight to Dr. Jenouri's opinion noting it was somewhat consistent with the evidence and specifying that he found, based on Plaintiff's multiple surgeries, Plaintiff "has more than 'mild' physical limitations." (T. 38.) It is clear that the ALJ did not rely solely on Dr. Jenouri's opinion in determining Plaintiff's RFC and, in fact, reached a more restrictive RFC than that opined by Dr. Jenouri. (T. 33-34.)

The Court reiterates that reviewing the medical opinions along with the other evidence is within the ALJ's purview, as is the need to resolve any material conflicts in the evidence and those opinions. *Bliss*, 2015 WL 457643, at *7; *Petell*, 2014 WL 1123477, at *10. The Court finds that the ALJ properly considered the opinions and other evidence before him and resolved any inconsistencies therein to reach an RFC finding supported by substantial evidence. This Court will not reweigh the evidence that was before the ALJ. *See Lewis v. Colvin*, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015) (noting that it is not the role of a court to "re-weigh evidence" because "a reviewing court 'defers to the Commissioner's resolution of conflicting evidence'" where that resolution is

supported by substantial evidence) (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012); citing *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009)); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

For the reasons outlined above, the ALJ's analysis of the opinion evidence and the resulting RFC are supported by substantial evidence. Remand is not required on these bases.

### C.    Whether Substantial Evidence Supports the ALJ's Step Five Finding

Although the claimant has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'" *McIntyre*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)). "An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [and]. . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved." *McIntyre*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)). "If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Pardee*, 631 F. Supp. 2d at 211 (citing *Melligan v. Chater*, 94-CV-0944, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

After determining the RFC, the ALJ found that Plaintiff was unable to perform any past relevant work through the DLI, but that he could perform other jobs existing in significant numbers in the national economy, based on VE testimony.  (T. 38-40, 74-77.)  Plaintiff argues that the Step Five determination is not supported by substantial evidence because the VE's testimony is unreliable as it was based on a flawed and incomplete hypothetical.  (Dkt. No. 11, at 25-26 [Pl.'s Mem. of Law].)  The Court finds this argument unpersuasive.  As discussed in Section III.B. of this Memorandum-Decision and Order, the Court finds that the ALJ's analysis regarding the opinion evidence and the resulting RFC are supported by substantial evidence.  The ALJ's decision includes adequate explanation for his findings on Plaintiff's alleged limitations, and Plaintiff has not established further limitations than those included in the RFC.  Thus, the Court finds that the ALJ did not err in relying on the VE testimony which was in response to a question reflecting the ALJ's RFC determination.  (T. 33-40, 74-77.)  Remand is not required on this basis.

## IV.  CONCLUSION

**WHEREFORE**, for the reasons stated herein, it is HEREBY

**ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

**ORDERED,** that Plaintiff's Complaint is **DISMISSED**.

**IT IS SO ORDERED**.

Dated: August 12, 2019
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge